NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## GEORGIANNA ROWELL, PETITIONER, v. TIMOTHY BOWERS, RESPONDENT.

. This is an action under the Workmen's Compensation law brought by Georgianna Rowell, a woman sixty-five years of age. The petitioner was employed at the time of the accident by Timothy Bowers on a farm, cutting potatoes for him. On the morning of the 9th of April, 1928, the petitioner was working in the employer's barn and while so engaged it became necessary for her to answer a call of nature, and in order to do so she says that she sat down on the floor of the barn and let herself down to the ground, a distance of twenty-eight inches, in order to leave the barn, and while so doing fell and injured her hip and leg and knee.

The respondent in his answer stated that the petitioner, instead of leaving the barn through the usual and proper entrance and exit undertook to jump off a platform used for loading and unloading purposes and so fell and was injured, and contends, therefore, that the petitioner did not sustain her injury out of and in the course of her employment. He further states that she was only a casual employe, and at the hearing, without objection, his counsel set up the further defense that she was an independent contractor.

There was considerable testimony as to the condition of the inside of the barn with reference to other doorways than the one through which the petitioner went. It was testified that the other passageways were blocked by sacks of potatoes

and other articles; that there was a boy about sixteen years of age sitting in front of another doorway; that in front of the other doorways on the outside of the barn was a lot of boxes and barrels and rubbish. There was testimony by the witnesses of the respondent denying these statements and to the effect that there was a clear passageway through other doorways. The petitioner testified that she was taken short and that she was within a few feet of the doorway in question and that it was necessary for her to leave by the shortest way, which was through the doorway in question. There had been several employes working in this barn before but the respondent had never instructed any of them, including this petitioner, as to which doorway to use for the purpose of entrance or exit; that he had never said anything to any of them about any toilet facilities.

Considering the evidence as a whole I find that the petitioner's attempt to leave through this doorway was not an unreasonable act and that she was doing a natural and reasonable thing by attempting to leave as she did. I do not find as a fact that she jumped from the doorway as alleged by the respondent, but that she let herself out in as easy a manner as could be done, and I find, therefore, that she sustained her injury in an accident arising out of and in the course of her employment.

It also appears from the testimony that the petitioner had been engaged the year before by this respondent for the same work as she was doing at the time of the accident; that during the previous year he had engaged her also for the present year; that the employment was definite and recurring; that the work would take several weeks; that there was expectation on both sides that the work would continue until all the potatoes were cut, which were of a considerable quantity and that the petitioner had informed the respondent that she would be ready to come for this work whenever he called her.

I find as a fact, therefore, that the said work was not casual and did not happen by chance.

Nor can I agree with the respondent's contention that the petitioner was an independent contractor. The testimony of the petitioner and that of her daughter were uncontradicted that they were subject to instruction by the respondent as to certain details of the work. They were, for example, told which potatoes to cut and where to put them after they were cut; they were told that certain potatoes were to be piled in one place and others in another. Although the petitioner was paid by piece work she was told she was to be at work about eight o'clock in the morning and that she was to leave about five o'clock in the afternoon.

Under such circumstances, therefore, the petitioner could not have been held to have been an independent contractor.

It also appeared that the petitioner and her daughter had been paid the sum of $27 together; that the petitioner had worked nine days and her daughter six days, the two of them earning the aforesaid sum. From this we deduce a daily wage rate of $1.80 and a weekly wage rate, therefore, of not more than $10.80, two-thirds of which comes below the $8 minimum compensation rate. According to the testimony of Dr. Graham, the petitioner's physician, temporary disability lasted until June 26th, 1928, or a period of eleven weeks. Compensation, therefore, for temporary disability should, therefore, be for eleven weeks at $8 per week.

It appeared that the petitioner suffered a fracture of the neck of the left femur or hip bone. X-ray photographs produced show that the fracture had not united and is still un-united, the bones being separated about a half inch. It was testified by the petitioner's physician that the extent of the permanent disabiilty was one hundred per cent. loss of the use of the leg and I agree with this statement. It was also testified that the petitioner is unable to have any use of her leg since the time of the accident; that she is required to eat and sleep and spend her entire time in a chair. In view of the fact, however, that the petitioner refused to co-operate with the doctor in charge of the case in his effort to reduce the degree of permanent injury, compensation should be modi-fied for permanent injury so as to allow the petitioner only

ninety per cent. in this respect. This calls for one hundred and fifty-seven and one-half weeks compensation for permanent injury at $8 per week, or a total of $1,260.

With regard to the medical expense it appears from the record that no request was made by the petitioner that the respondent furnish this service. It was, however, established that the respondent knew of the need of such service. It further appears that no application was made by the petitioner for the extension of the allowance provided for by the statute. The proof shows that the hospital bill amounted to more than $50. Consequently the petitioner should be allowed in addition $50 on account of hospital charges. The testimony of Dr. Graham was that his services were worth $25 and this sum should be allowed for his services.

I think also that the petitioner is entitled to a reasonable counsel fee to be paid to her counsel, which amount I hereby fix at $200.

The total amount of compensation which has accrued to the date of the rule for final judgment should be paid in one lump sum at once, together with the aforesaid medical allowance and counsel fee.

A rule for judgment will be drawn up in conformity with the above.

W. E. STUBBS,
*Deputy Commissioner.*